UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

RICHARD L. KOMPROOD, JR.,

    Debtor.

Case No. 23-11890-13

---

### MEMORANDUM DECISION

Debtor Richard Komprood and Michelle Staley were divorced in 2008. Debtor filed a Chapter 13 bankruptcy. Staley timely filed a priority claim. Debtor objects to Staley's claim. The central question presented is whether the claim is a nondischargeable domestic support obligation ("DSO") or property division.

**FACTS**

*Background*

Debtor and Staley were married in 2006. During the marriage, they owned two pieces of real estate: a condominium in McFarland ("Condo") and a residence in Madison ("Residence"). Staley brought both properties into the marriage. An old cabin on the McFarland property was demolished so the parties could construct a new residence.

The parties took out a loan to construct the new residence. They also obtained a home equity line of credit ("HELOC") from Associated Bank of about $25,000 to address any unexpected costs to complete the Condo. The HELOC was secured by a lien on the Residence.

On September 15, 2008, a cash advance of $20,000 was taken from the HELOC by Debtor. A divorce was then filed by Debtor. Shortly after the divorce was initiated, the parties agreed to a temporary stipulation and order which obligated the Debtor to repay the HELOC. The parties then negotiated a final marital settlement agreement ("MSA"). It was incorporated in the judgment of divorce in 2010. The MSA divided property, allocated debts, and addressed maintenance and the consequences of a failure to satisfy debts allocated to a party.

The parties were awarded joint title and interest (as tenants in common) in the Condo. The Debtor alone was awarded sole use and possession of the Condo. He was also solely responsible for the mortgage on it and required to hold Staley harmless for its payment.

Staley was awarded all right, title, and interest in the Residence. She was responsible for the debts and expenses of the Residence <u>except</u> the HELOC. The Debtor was ordered responsible for the HELOC and to hold Staley harmless for its payment.

He was ordered to pay the HELOC directly to Associated Bank. His last recorded payment to Associated Bank was in May 2016. The Debtor was able to reduce the balance to around $8,000, but was unable to continue payments when he became severely ill and underwent several years of treatment.

Since the Debtor failed to make payments, Associated Bank filed a foreclosure action on the Residence in Dane County Circuit Court in 2017. Associated named both the Debtor and Staley in that action. Debtor did not

appear in the action. To resolve the foreclosure, Staley used her own funds to reinstate the HELOC. She paid a total of $10,992.65 between May 2017 and July 2019. The HELOC was then paid off.

Debtor did not reimburse Staley for her payments on the HELOC. So in June 2023 she filed a motion for contempt against him for reimbursement of the HELOC and for attorney's fees.

The state court found the Debtor in contempt and sentenced him to 90 days in Dane County Jail. But the sentence was stayed pending compliance with repayment conditions. The conditions were that Debtor pay Staley $15,063.95 in monthly payments of $625.16, beginning on September 1, 2023.

The Debtor made the initial payment. He missed the October payment under the contempt order. He filed this bankruptcy on October 23, 2023.

Staley filed a priority claim for $17,200.29. This represents $15,063.95 from the state court contempt order and $2,761.60 in attorney's fees incurred from July 1, 2023, through the petition date.[1]

*Divorce Judgment and Marital Settlement Agreement*

The judgment of divorce incorporates the parties' MSA. The provisions about assignment of debt, failure to pay certain debts, and support are central to the issue in this matter.

---

[1] Debtor made one payment under the contempt order, which subtracts $625.16 from the total, resulting in the claim amount of $17,200. The attorney's fees are for the period July 1, 2023, through October 23, 2023. No detail or description is provided.

Section VII, "Debts and Financial Obligations," allocates specific debts between the parties. The responsibility for the HELOC is the sole obligation of the Debtor. ECF No. 56, Exh. 100, Section VII.

Maintenance is addressed in two sections of the MSA. First, the MSA says the parties waive any right to claim or receive maintenance payments at any time. *See* ECF No. 56, Exh. 100, Section II. Then the MSA addresses the failure of a party to pay the obligations assigned to him or her. If a creditor obtains payments or satisfaction from either Debtor or Staley for a liability assigned to them, the payor may seek reimbursement from the other. The section concludes that the "allocation of debt has been considered as a part of the support obligations of each party and is in lieu of any maintenance payment." *See* ECF No. 56, Exhibit 100, Section VIII. It also says that such payment is "deemed to be a Domestic Support Obligation as . . . defined by the U.S. Bankruptcy Code." *Id.* Finally, the payment obligations can be enforced by a contempt order. *Id.*, at Section XIX.

*The Arguments of the Parties*

Debtor says the HELOC was an obligation that both parties incurred since they both signed it. Because both had a legal liability to Associated Bank, he posits the other provisions of the MSA can be ignored. He emphasizes that neither party could seek any maintenance from the other after the judgment was entered. He argues the MSA's allocation of debt is simply part of the property division so it should be a dischargeable property settlement under

4

section 523(a)(15). Thus, he says, it is not a nondischargeable domestic support obligation under section 523(a)(5).

Staley stresses it was the Debtor who—on the day he filed for divorce—took out the $20,000 under the HELOC. While both may have signed the papers for the HELOC, it was the Debtor who actually incurred the debt by making a draw on the HELOC.

She points to the allocation of that amount as the sole liability and responsibility of Debtor. She also stresses that the plain language of Section VIII of the MSA unambiguously says the allocation of debt has been considered a part of the support obligations of each party and replaces any maintenance payments. Finally, she says the section states that the parties agree the allocation of debt is deemed to be a DSO as defined by the Bankruptcy Code.

### DISCUSSION

*1. Burden of Proof*

Claim objections operate under a burden-shifting framework with the claimant bearing the ultimate burden of proof by a preponderance of the evidence. Fed. R. Bankr. P. 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." An objection to a claim must provide some evidence to defeat the presumption of validity. *In re Airadigm Commc'ns, Inc.*, 376 B.R. 903, 916 (Bankr. W.D. Wis. 2007). Thus, the burden is on the objecting party to produce "evidence sufficient to rebut the claim." *In re Hood*,

5

449 F. App'x 507, 509–10 (7th Cir. 2011); *In re Carlson*, 126 F.3d 915, 921–22 (7th Cir. 1997).

The evidence from the objecting party "must be of a probative force equal to that of the allegations asserted in the claim." *In re Vanhook*, 426 B.R. 296, 298-99 (Bankr. N.D. Ill. 2010). Once the objecting party has provided sufficient evidence, the claimant bears the ultimate burden of proof by a preponderance of the evidence. *In re Carlson*, 126 F.3d at 921–22.

   2. *Staley's Claim is a Nondischargeable DSO*

In a Chapter 13, claims that are DSOs are excepted from discharge under 11 U.S.C. § 1328(a)(2). This provision includes debts excepted from discharge under 11 U.S.C. § 523(a)(5), which are debts defined as DSOs under 11 U.S.C. § 101(14A). Section 101(14A) of the Bankruptcy Code provides that a DSO is:

> a debt that accrues before, on, or after the date of the order of relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
>   (A) owed to or recoverable by—
>
>       (i) a spouse, former spouse, . . . of the debtor . . . ;
>           . . .
>
>   (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, . . . of the debtor . . . , without regard to whether such debt is expressly so designated;
>
>   (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
>       (i) a separation agreement, divorce decree, or property settlement agreement;

6

      (ii) an order of a court of record;
        . . .

  (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

For the HELOC to be considered a DSO, this Court must determine that the obligation is (1) owed to or recoverable by Staley; (2) is alimony, maintenance, or support; (3) was established before the Debtor filed for bankruptcy relief by a separation agreement or divorce decree; and (4) has not been assigned other than for collection purposes. 11 U.S.C. § 101(14A).

There is a debt to Staley. It arose before the petition date and grew out of the MSA and divorce. It has not been assigned to anyone. So the only element at issue is the second: whether the HELOC is in the nature of alimony, maintenance, or support.

The terms "alimony" and "support" are given a broad construction to promote the congressional policy that favors enforcement of obligations for spousal and child support. 4 COLLIER ON BANKRUPTCY ¶ 523.11[2] (16th ed. 2024). In this way, Congress has recognized the legitimate needs of the dependents of a bankruptcy debtor and has overridden the general bankruptcy policy in which exceptions to discharge are construed narrowly. *See In re Jones*, 9 F.3d 878 (10th Cir. 1993); *Mullally v. Carter*, 67 B.R. 535, 538 (N.D. Ill. 1986).

This Court recently ruled on whether a HELOC was a nondischargeable DSO under section 523(a)(5) or a dischargeable property division under section 523(a)(15) in *Erlandson v. Erlandson* (*In re Erlandson*), No. 20-11739, 2022 Bankr. LEXIS 805 (Bankr. W.D. Wis. Mar. 28, 2022). There, the parties agreed to a stipulation of separation. Plaintiff ex-spouse was awarded the marital home and was held responsible for the remaining mortgage balance, while debtor/defendant was to be solely responsible for a HELOC. He was to have it transferred to his name only. The couple also had a child, and the stipulation awarded joint custody but plaintiff retained physical placement of the child in the marital home. The parties reconciled for a time but eventually sought a divorce. The stipulation did not address spousal support, so the court ordered temporary support requiring payment of the HELOC finding it "equitable."

After 14 years of marriage, the divorce was finalized. Plaintiff was awarded temporary alimony in the amount of $400 per month for about two years, along with an agreed-upon child support obligation. At the time of the dissolution, plaintiff was enrolled in school but had insufficient income to pay all her expenses including the mortgage and tuition. The $400 per month in alimony represented the education expenses that plaintiff could not meet on her own based on a significant disparity in the parties' incomes.

This Court reasoned that "[t]he main principles guiding bankruptcy courts in determining if a debt is a nondischargeable DSO are the intent of the parties or the state court in creating the obligation as well as the purpose of the obligation considering the parties' circumstances at that time." *Id.* at *8 (citing

8

*Tadisch v. Tadisch (In re Tadisch)*, 220 B.R. 371, 374 (Bankr. E.D. Wis. 1998)). Further, "[i]f intent is not explicitly expressed, the court may look beyond the document to the circumstances of the parties at the time of divorce." *Erlandson*, 2022 Bankr. LEXIS 805, at *8–9 (citing *Messnick v. Messnick (In re Messnick)*, 104 B.R. 89, 92 (Bankr. E.D. Wis. 1989)).

This Court found the HELOC to be a nondischargeable DSO. Doing so, it first relied on the language of the parties' stipulation of divorce. The stipulation provided that either party's assumption of a debt was fulfilling his or her support obligation to the other party. Next, this Court looked at the placement of the couples' child and found that since the child was living with plaintiff, the intent of the HELOC was to be a support obligation. Finally, this Court stressed there was a significant income disparity between the parties and that at the time of the separation Plaintiff couldn't support herself.

The same starting point applies here. Unlike the stipulation in *Erlandson*, the language of the parties' MSA is clear.[2] It assigns responsibility for the HELOC to the Debtor. Then it states that "the allocation of debt has been considered as a part of the support obligations of each party and is in lieu

---

[2] Section VIII of the marital settlement agreement, titled "Bankruptcy" states:
    In the event a creditor obtains payment or satisfaction from a party or his or her property for a liability or obligation that the party did not incur, that party shall be entitled to reimbursement of such amount from the party who incurred the liability or obligation, or from the estate of such party if the party is then deceased.
    The allocation of debt has been considered as a part of the support obligations of each party and is in lieu of any maintenance payment. As such, the parties agree that they shall be non-dischargeable under section 523(a)(5) of the U.S. Bankruptcy Code and therefore deemed to be a Domestic Support Obligation as now defined by the U.S Bankruptcy Code.

9

of any maintenance payment. As such, the parties agree . . . [it is] therefore deemed to be a Domestic Support Obligation." Any interpretation of this language that places the HELOC outside the definition of a DSO is unreasonable.

This Court need not look beyond the plain language of the MSA. "[T]he initial inquiry must be to ascertain the intention of the parties at the time they entered the stipulation or property settlement agreement . . . . A written agreement between the parties is persuasive evidence of intent." *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir. 1986). "Thus, if the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control." *Id.* Only if the agreement is ambiguous does the court look at extrinsic evidence to determine intent. *Id.*

The Debtor urges this Court to find the MSA is ambiguous. He emphasizes that the parties explicitly waived any right to maintenance in the MSA. He equates a waiver of maintenance with an absolute denial of any support. He says he didn't understand that the allocation of the HELOC being "considered as a part of the support obligation" meant it was support. He also says the HELOC was a loan that both parties incurred during the marriage and so it is not subject to Section VIII of the MSA. Finally, he argues that while the MSA may include "catch-all" language indicating that the contemplation of debt assumptions is to be considered domestic support, nothing in the MSA indicates that support was intended or needed.

10

Each of these arguments fails. First, simply because the parties waived maintenance doesn't mean they waived support. The terms maintenance and support are related but distinct. *See* 11 U.S.C. § 101(14A)(A)(i) (defining a DSO as a debt in the nature of alimony, maintenance, *or* support). Property division, maintenance, and support are all interrelated. *Cook v. Cook*, 201 Wis. 2d 72, 77–78, 547 N.W.2d 817 (Wis. Ct. App. 1996). Further, the fact that the support obligations under the MSA were provided *in lieu* of maintenance indicates that the terms—while different—bear a relationship in purpose.

Second, Debtor relies on the first paragraph of Section VIII of the agreement to say that the HELOC isn't support because it's an obligation that both parties incurred. But this reading ignores the second paragraph of the section—as well as the prior debt allocation section—which places responsibility for the HELOC on the Debtor. Instead it specifies that it is in place of maintenance, is considered support and is to be a DSO if there was a bankruptcy. ECF No. 56, Exh. 100, Section VIII.

Finally, the Debtor urges that his responsibility for the HELOC wasn't in the nature of support because there wasn't any substantive relationship between the debt allocation and an award of support or maintenance. He argues that determining whether a liability is a dischargeable property division or a nondischargeable DSO is a federal and not a state law question. So he asserts the label and meaning given the obligation by the parties or the state court are not determinative.

Debtor is correct that dischargeability is a federal question. But as discussed, the MSA is clear evidence of the parties' intent. The Sixth Circuit in *In re Calhoun*[3] explains that "the initial inquiry must be to ascertain whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the assumption of the joint debts. If they did not, the inquiry ends there." *Id.* at 1109. The intention of Staley and Debtor is clear in the MSA. They did intend to create a support obligation.

Yet even beyond the four corners of the MSA, the Court believes the parties intended the HELOC to be a nondischargeable DSO. At the time of the separation, Staley was unemployed because of a disability and the Debtor worked as a carpenter. Staley was responsible for a child. Debtor incurred the debt when, on the day he filed for divorce, he drew $20,000 on the HELOC. He kept that money. He testified he eventually used it to improve the Condo that was being awarded to him in the divorce.

At the final hearing, both parties testified they were represented by counsel at the time they entered into the MSA. Debtor testified he didn't recall that the MSA would make the HELOC a nondischargeable DSO. Instead, he thinks it resembled a general unsecured credit card obligation. While he knew he was to pay it, he didn't think about Staley's signing it or the mortgage on the Residence.

In contrast, Staley testified that when they were negotiating the MSA, she was aware the Debtor had previously filed bankruptcy. She testified she would

---

[3] 715 F.2d 1103 (6th Cir. 1983).

not have signed the MSA without the provision making the HELOC non-dischargeable in bankruptcy.

Both parties demonstrated plausible testimony. But on balance Staley's testimony was more believable and so more credible. The parties were represented by counsel when negotiating the MSA. Staley's recollections are corroborated by the ultimate language that appears in the MSA. Debtor's recollection is that he was responsible for the HELOC but he simply thought that settled who would be liable. He has no recollection of any discussion about what would happen if he didn't pay. Neither does he recall the sections of the MSA about the HELOC being a support obligation. That he had an attorney throughout the divorce supports the conclusion his recollection is unreliable on the intent of the parties at the time of the agreement or the meaning of the MSA language.

The state court held a hearing on the contempt motion. ECF No. 54, Exh. 7. Debtor, Staley, and their respective attorneys were present. The court found Debtor in contempt for failing to pay the HELOC and ordered payment of $15,063.95 to purge the contempt. *Id.* This was an enforcement of the MSA and compensation to Staley. ECF No. 56, Exh. 100, Section XIX.

Thus, the Court finds her testimony more credible and that the intent of the parties in drafting the MSA was to make the HELOC nondischargeable in bankruptcy.

## CONCLUSION

The parties' intent is clearly expressed. The Court will not substitute its own understanding of the parties' intent for the clear language adopted in the agreement.

Beyond the plain language of the MSA, there is a basis for reading the allocation of the HELOC as support: Staley was unemployed at the time of the divorce because of a disability and she was responsible for a child. She also credibly testified that she would not have signed the MSA without the HELOC being designated as nondischargeable in bankruptcy. Debtor received and used the HELOC funds. Both were represented by able lawyers in the divorce. These facts, coupled with the language of the agreement, make clear the allocation of the HELOC was intended to be and is a nondischargeable DSO under 11 U.S.C. § 523(a)(5). For these reasons, Debtor's Objection to Claim Number 6 of Michelle R. Staley is denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: June 4, 2024

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge